BREAUX, O. J.
The Alleman Planting & Manufacturing Company, Limited (hereafter, for brevity, the “Alleman Co'mpany”) and Baker-Wakefield Cypress Company, Limited (hereafter the “Baker Company”) are respectively plaintiff and defendant in this suit.
The Alleman Company claims of the Baker Company the sum of $9,544.10; $2,544.10 of the amount being the alleged value of timber cut. down on the land of plaintiff, each tree measuring 12 inches and over in diameter. The Alleman Company charges that the Baker Company also took from its land $2,000 of the $9,544.10, the value of 100 cypress trees, measuring from 8 to 12 inches in diameter, and that $5,000 of the amount is for damages for the wanton destruction of small trees. The Alleman Company avers that on April 11, 1911, it sold to defendant 178 trees standing on a small tract of its land, and that according to representation of the defendant company at the date of its purchase 77 trees were on the ground (trees known among swampers as choctaw from the fact that they are dead trees lying on the ground) and 101 trees standing.
These last-mentioned trees, we are informed by the pleadings, were sold to the defendant for the price of $2,200. The contention is that defendant without regard to its agreement cut down and moved away from plaintiff’s land 206 standing trees of over 12 inches in diameter; also, removed and appropriated cypress and hardwood trees. This was in addition to the 101 standing trees to which we have just referred above and the 77 choctaws. That defendant took away all that it was possible to take of the smaller growth, which were not, according to plaintiff, included in the sale.
Defendant specially avers that some time prior to April 11, 1911, it bought all of the timber on the small tract of land in question belonging to plaintiff, and that at this date it had all been removed from the land. Defendant also alleges: “That all of the negotiations in regard to the timber were verbal and that there was nothing in writing. That it bought the trees in good faith from the president of the plaintiff company, who was fully authorized to sell, and that, as the president afterward accepted the $2,200, he is now estopped. Defendant specially denies that it had trees removed after the 11th day of April, 1911. That plaintiff cannot under the allegations of its petition recover for any timber taken prior to April 11, 1911, for it distinctly avers that the timber was cut down after that date. Defendant also urges that plaintiff cannot be heard to repudiate its contract and at the same time retain the consideration received. That it should at least be credited with the $2,200, received as before mentioned. That all of the timber removed by it was not worth that price.
The judgment appealed from condemned the defendant to pay $1,600 and interest.
From that judgment, it appealed.
[1 ] The land measured 18 acres in all. Its title is not at all involved in this case; only the trees thereon.
The president of plaintiff company testified that negotiations for the sale of 178 trees began early in the year 1910; that about that time the president of the defendant company made an offer to him to buy the land for a small amount, which he declined to accept because he did not consider it sufficient. The negotiations between the parties, however, continued, and after a few months it was finally agreed that the Baker Company would pay $2,200. Whether this price was for the 178 trees or for all the trees on the land was not, as we take it, expressly men: tioned at any time. Plaintiff’s contention is that defendant at no time offered to buy other than the 17S cypress trees. The defendant, on the other hand, is equally as positive that it bought all the trees on the land. The president of the plaintiff company *685 testified that on the 11th day of April, 1911, he tendered a contract to the president of the defendant company to be signed, but that the president of the Baker Company refused to sign, at the same time he paid the $2,200, mentioned as the price of the timber. He did not mention at the time that he paid this amount that it was in full satisfaction of all the timber, nor did the president of the plaintiff company mention that it was in payment of the 178 trees.
The president of the plaintiff company testified that his company did not sell other than the 178 trees, because, as he stated, they were needed for the use of the plantation. He said that at the time he offered the deed to be signed by the president of the defendant company, and at the time he received the $2,200 he had heard that defendant had cut down all the trees on the land. But he insists that even at that time he received only the price of the 178 trees. As to the deed which he handed to the president of the defendant company to be signed, the latter replying said that it was not necessary to sign a deed, as the property was movable; but here again nothing was said about the number of trees further than the 178.
Another witness for plaintiff, a member of the board of directors, testified that he also called on the president of the defendant-company to sign the deed. At this time, the president of the said company said that the description in the deed offered to him to be signed was not correct for the reason that it limited the number to 178 trees, while he was entitled to all the trees on the tract, which he had cut down and removed and paid for.
The secretary of the plaintiff board of directors testified: That the president of the defendant company opened negotiations with the plaintiff company by calling on the president of the plaintiff just before a meeting of his board. That he, the secretary (Mr. Carmouche and Mr. Ganel were present) asked defendant’s president what it was he desired to buy. That the defendant then handed him slips of paper on which there were many figures. This president said that there were 178 trees on the land for which he offered a price. The diameter of these 178 trees was written on these slips under a different heading. It included all trees on the land over 12 inches. It was from this time that they discussed this matter, which finally resulted in the president of the defendant buying the trees as before stated; whether the 178 trees, or all the trees, does not seem to have been positively settled at the time.
The secretary stated that at the time the president of the defendant company called he did not know that this officer had not signed the deed that had been handed to him by the president of the plaintiff company for his signature. He also stated that the slips before mentioned, handed to him by the president of the defendant company, contained the length and the number of cypress trees, and that this president made no mention at all of other trees. Having heard that all the trees had been cut down, he went to the 18-acre tract of plaintiff in question and found that all the trees had been cut down. 1-Ie then counted the hard wood trees on the land and measured them. He counted 169 cypress stumps from which trees had recently been cut down; 140-odd hard wood trees. The average diameter of the cypress was 36 inches he found by measuring the stumps. That there was no timber left on the land. That in his measurement there were a larger number of diameters less than 12 inches than there were of the trees over 12 inches. That the swamps had been cleared of all trees of over 4, 6, or 8 inches in diameter as well as of all trees of sizes over 12 inches in diameter.
He stated that for the use of the plantation the trees measuring less than 12 inches *687 were worth in a round sum from $1,600 to $1,800.
There was corroboration of the testimony of this witness in part at least by the testimony of another member of the board of directors, who settled upon a lump sum of $1,S00, as tbe value of the trees of diameter less than 12 inches.
The surveyor who testified in this case s^ore that ash trees are worth in the locality $4 per 1,000, and gum, $2 per 1,000.
This is, in substance, all the testimony of plaintiff.
The president of the defendant was then called to the witness stand. 1-Ie stated that his intention in buying was to buy all the timber on the land; that nothing was ever said which led him to understand differently. He had had the timber examined, and the one by whom this work was done reported the number of cypress trees on the land; that the other trees had no value. To quote him literally:
“If we own the hard wood, we will cut it, because in cutting the cypress probably we will destroy a large part of the hard wood, and we take it that the ash is the only hard wood that we would pay anything for.” “If 1 mentioned anything in regard to the 178 trees to Mr. Truxillo, it was just a matter of information, but that had nothing to do with the transaction. We were buying the timber, and that was our estimate.”
In buying trees, 12 inches and over are estimated as having value.
This Mr. Truxillo was the president of the plaintiff company before mentioned.
There was decided conflict of testimony between plaintiff and defendant as to whether defendant had bought 178 trees or all of the trees on the land.
The motive of the Baker Company must have been to buy all of the timber on the land. If it was, it was not expressed clearly, for no reference, according to plaintiff’s witnesses, was ever made to any trees save the 178 trees. Only these trees, and not one more.
It was the intention to reduce the contract to writing. This was not done. Late in the negotiations a contract was prepared. The defendant did not sign it, and at first did not urge that it did not contain a correct description of the property sold, although it contained mention only of the 178 trees.
The plaintiff company industriously wrote everything down, to wit, resolutions, minutes, notice to each shareholder in addition to the notice that the members of the board of directors had kept letters received relating to the number of trees. These are all. They referred to the 178 trees. They were not sold until every stockholder had consented to the sale after the resolution had been passed upon by the board of directors; all referring to the 178 trees 'and agreeing with the testimony of plaintiff’s witnesses.
The defendant company was not as. minute in the negotiations, and the information did not go to different persons, as it was with the plaintiff.
In the pleadings, defendant urged that before instituting suit plaintiff should have made tender -of the amount received; also, that it was estopped.
As to the tender, from the point of view of the plaintiff, sustained by the weight of the testimony, it had a right to the amount paid for the trees which it contended it had sold and which defendant acknowledged to have received.
[2] As to estoppel: it also is without foundation, for the amount received on the theory before mentioned was in payment of the trees delivered and in satisfaction of all the trees on plaintiff’s property which defendant thought it had bought, but in regard to which there was evident mistake according to all of the witnesses for plaintiff and the written testimony.
Having arrived at the conclusion that the weight of the testimony is with the plaintiff in regard to the number of trees sold, we now *689 have to consider the amount to be allowed to the plaintiff for the trees cut down and removed other than the 178 trees. It sometimes appears as if the plaintiff had made the most of the timber on its 17 and a fraction acres, and that it had recovered about all that was of value in the swamp. But as we are to be governed by the testimony, and as we must allow for the number of trees taken in addition to those before mentioned, we have gone into the details and found that there were 140 ash wood trees cut down and removed, worth from $3 to $4 a thousand stumpage, and that the trees measured according to defendant 250 feet each.
Defendant through its witnesses insists that this is the only timber that had any value other than the cypress on the place. There was oak and gum. It is said that these oak and gum are of no value to a sawmill. Other witnesses have stated that it was worth about $1.50 a thousand. At first we sought to include this hard wood in making up account. After consideration we have concluded to consider these trees as covered sufficiently by the amount allowed in the judgment of the district court.
We have not found an estimate made with any degree of care as to the oak and gum.
Matters are in a state of uncertainty as to the number of these trees. There were small trees destroyed and taken away according to plaintiff’s witnesses, who represented that the land was entirely denuded.
We have no positive estimate by defendant’s witnesses as to these small trees, as well as the oak and gum.
It seems that plaintiff had a plantation adjacent. They have given figures fixing the amount at a minimum of $1,600. Justice has been done. When parties are not careful in making their contracts or hastily execute an agreement without positive understanding, it frequently is difficult to reach an entirely satisfactory conclusion. We do not see our way clear to any other judgment than that heretofore rendered in the district court.
For reasons assigned, the judgment of the district court is therefore affirmed.